[No. 6353–1–II. Division Two. July 9, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. JACK
HORST PLEASANT, *Appellant.*

*Richard L. Levandowski,* for appellant (appointed counsel for appeal).

*William H. Griffies, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Deputy,* for respondent.

PETRIE, J.—Defendant, Jack Pleasant, appeals the trial court's denial of his post–trial motions in arrest of judgment and for a new trial. This appeal stems from Pleasant's conviction of selling marijuana to a paid agent of the Tacoma Police Department and an officer of the Tacoma Police Department who were conducting a "sting" operation. On appeal, the defendant contends that he was wrongfully convicted and accordingly entitled to arrest the judgment because (1) the jury erroneously disregarded his entrapment defense, (2) the sting operation violated his right to due process, or, alternatively, (3) he was entitled to a new trial because newly discovered evidence after trial would have influenced the jury's consideration of his entrapment defense. We disagree and affirm the conviction.

In an effort to combat extensive drug traffic in the South Tacoma area, the Tacoma Police Department set up a sting operation to detect individuals engaged in drug sales. Tacoma Police Officer Loughrey and paid agent Caven rented a room at Nendel's Motel in South Tacoma for the ostensible purpose of recruiting workers for a construction crew. Caven posed as the owner of a construction company; Officer Loughrey acted as the foreman of the crew. Caven handed out cards in the area and indicated that he would be at Nendel's Motel accepting applications for employment on his construction crew. Seventeen convictions resulted from this sting operation.

Jack Pleasant, an unemployed construction worker with no previous convictions for drug offenses, went to the motel, obtained an application from Caven, filled it out, and submitted it. After Pleasant had handed in his appli-

cation, Caven looked it over and wrote "possible employment" on it. He then asked Pleasant whether he could procure marijuana for him. Pleasant agreed to try to get marijuana for Caven and, within an hour, obtained a quarter pound of marijuana. Pleasant testified that he got marijuana for Caven to enhance the possibility of obtaining a job from him.

After Pleasant returned to Caven's motel room with the marijuana, Caven asked Pleasant if he could obtain an additional 2 pounds of marijuana for him. During a discussion about the details of this transaction, the police arrested Pleasant.

We consider first whether the trial court erred by denying Pleasant's post–trial motion in arrest of judgment based on his contention that the jury erroneously rejected his entrapment defense. He does not contest the trial court's jury instruction on the defense of entrapment.

The trial court did not err when it denied the defendant's motion in arrest of judgment. A motion in arrest of judgment challenges the sufficiency of the evidence to take the case to the jury. *State v. Randecker*, 79 Wn.2d 512, 487 P.2d 1295 (1971). An appellate court's only function is to determine whether the evidence is legally sufficient to support the jury's finding. In ruling on such a motion, we and the trial court must assume the truth of the State's evidence and view it most strongly against the defendant in a light most favorable to the State.

Here, viewing the evidence most favorably to the State, the jury could clearly have concluded that the defendant was predisposed to sell marijuana and thus was not entrapped into committing the crime by the instant sting operation.

Establishing the defense of entrapment involves making the factual determination that (1) government officials induced the defendant to commit the crime, and (2) the defendant lacked the predisposition to commit the crime. Because these are factual determinations, they fall within the province of the jury. *State v. Keller*, 30 Wn.

App. 644, 637 P.2d 985 (1981); *State v. Swain,* 10 Wn. App. 885, 520 P.2d 950 (1974); *State v. Morgan,* 9 Wn. App. 757, 515 P.2d 829 (1973).

 Here, there was substantial evidence to support the jury's factual determination that the defendant had the predisposition to commit the crime charged. Pleasant quickly and readily complied with Caven's request to procure marijuana. The ready compliance of a person who is given the opportunity to commit a crime by a police officer or agent is evidence of his predisposition to commit such a crime. *State v. Swain, supra.* Here, also, the defendant's extensive knowledge of the customs and usages of the drug trade could be regarded as further evidence of his prior predisposition to engage in illicit drug traffic. Moreover, he exhibited refined knowledge of the going street price for marijuana and of the types of marijuana available on the market. We find no error.

We consider now whether the trial court erroneously denied defendant's motion for a new trial. Pleasant contends that after the trial had concluded, he had discovered "new evidence" that would have changed the result. After trial, Pleasant found an Oregon newspaper article indicating that agent Caven had several prior convictions. When Pleasant had requested such information about Caven at the omnibus hearing, the prosecutor's office had denied that Caven had any prior convictions. Pleasant alleges that the absence of this information impaired his right to a fair trial.

 We do not consider the merits of this question because it was raised for the first time to this court in defendant's reply brief. The scope of a reply brief is limited to those issues raised in the brief to which the reply brief is directed. *See* RAP 10.3(c); *Dickson v. United States Fid. & Guar. Co.,* 77 Wn.2d 785, 466 P.2d 515 (1970). An issue cannot be raised for the first time in a reply brief. Therefore, Pleasant's argument regarding Caven's prior convictions is not properly before this court.

We turn now to Pleasant's claim that the operation of

the sting operation impaired his right to due process of law. Here, Pleasant contends primarily that the "sting" operation abridged his right to due process because the scheme did not uncover criminal activity but instead instigated and created it; law enforcement officials induced Pleasant to participate in criminal activity in which he otherwise would not have engaged.

The United States Supreme Court has recognized the possibility of scrutinizing law enforcement activities under the due process clause.[1] *Hampton v. United States,* 425 U.S. 484, 491, 48 L. Ed. 2d 113, 96 S. Ct. 1646 (1976) (Powell, J., concurring). *See also State v. Putnam,* 31 Wn. App. 156, 639 P.2d 858, *review denied,* 97 Wn.2d 1018 (1982); *State v. Emerson,* 10 Wn. App. 235, 517 P.2d 245 (1973). Government conduct can bar conviction if it reaches a demonstrable level of outrageousness. Such conduct must be so outrageous that it violates the concept of fundamental fairness inherent in due process and shocks the sense of universal justice mandated by the due process clause. *Hampton,* 425 U.S. at 493; *State v. Putnam, supra.*

■ Though law enforcement techniques employed in Pleasant's particular case may be personally abhorrent, our guardianship of constitutional principles is not measured by personal distaste. *Hampton v. United States, supra,* clearly precludes this court from finding a due process violation in the case at bench. Although no clear standards have been articulated for determining what constitutes outrageous law enforcement conduct for purposes of the due process defense, the analysis in *Hampton* indicates

---

[1]In *Hampton v. United States,* 425 U.S. 484, 48 L. Ed. 2d 113, 96 S. Ct. 1646 (1976), a majority of the United States Supreme Court left open the possibility of challenging the actions of law enforcement officials under the due process clause. Justices Powell and Blackmun recognized the possibility of such a defense in their concurrence. *Hampton v. United States,* 425 U.S. at 493 (Powell and Blackmun, JJ., concurring). In their dissent, Justices Brennan, Stewart and Marshall also opined that such a defense should be available. *Hampton,* 425 U.S. at 497.

that no such violation occurred in the case at bench for two reasons. First, this defense is a rarely used judicial weapon reserved only for the most unusual circumstances. *See Hampton,* 425 U.S. at 493; *United States v. Bagnariol,* 665 F.2d 877 (9th Cir. 1981), *cert. denied,* 456 U.S. 962 (1982); *United States v. Ryan,* 548 F.2d 782 (9th Cir. 1976), *cert. denied,* 430 U.S. 965 (1977); *see also United States v. Brown,* 635 F.2d 1207 (6th Cir. 1980); *United States v. Myers,* 527 F. Supp. 1206 (E.D.N.Y. 1981); *United States v. Marcello,* 537 F. Supp. 1364 (E.D. La. 1982), *cert. denied,* 104 S. Ct. 341 (1983).

Second, the Supreme Court has stated that it is unlikely a due process violation will ever be found in the context of contraband offenses: the detection of such offenses requires law enforcement officials to resort to covert methods which would be unacceptable in other contexts. *Hampton,* 425 U.S. at 493–95; *Emerson,* 10 Wn. App. at 238.

Pleasant's due process claim rests primarily on his contention that government officials instigated the commission of the instant offense. It is clear, however, that the mere instigation of crime is not outrageous in the context of detecting contraband offenses. *See Hampton v. United States, supra; Myers,* 527 F. Supp. at 1225.

Moreover, we note that in situations involving substantially more intense and aggressive government activity, courts have declined to find a due process violation. *Hampton v. United States, supra; United States v. Smith,* 538 F.2d 1359 (9th Cir. 1976); *United States v. Bagnariol, supra.* In *Hampton,* law enforcement officials were far more enmeshed in criminal conduct than in the case at bench. There, law enforcement officials not only instigated criminal activity, but also supplied heroin to the defendant to sell and produced an undercover agent to purchase heroin from the defendant. Here, the conduct of the Tacoma Police Department falls far short of the sort of conduct contemplated by the due process defense.

We affirm.

WORSWICK, A.C.J., and REED, J., concur.

Reconsideration denied August 14, 1984.

Review denied by Supreme Court December 7, 1984.