IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82890-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RANDALL HAROLD ROGERS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Randall Rogers appeals the denial of his personal restraint petition (PRP) following agreed remand to the trial court for an evidentiary hearing and decision on the merits. The trial court ultimately concluded that Rogers failed to meet his burden as to the various claims raised in his petition and dismissed it. As he asserted in his underlying PRP, Rogers argues he was denied a fair trial, he received ineffective assistance of counsel, and the prosecutor engaged in misconduct, all broadly based on the presence of Bikers Against Child Abuse members at trial during the child victim's testimony. Finding no errors, we affirm.

FACTS

On March 13, 2017, Randall Rogers was charged with two counts of child molestation in the first degree by amended information. The named victim was E.R., Rogers' granddaughter. A trial occurred later that month, at which numerous family members and law enforcement testified, along with both E.R. and Rogers.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

The jury found him guilty as charged. Rogers appealed to this court and his conviction was affirmed.[1]

In November 2019, Rogers filed a personal restraint petition, alleging that the presence of Bikers Against Child Abuse (BACA) members at his trial during the two half-day sessions when E.R. testified resulted in the denial of his right to fair trial. Because the trial record was devoid of facts regarding Rogers' specific allegations, the parties filed a joint motion to transfer the PRP back to the superior court for an evidentiary hearing and determination on the merits. This court granted the motion pursuant to RAP 16.11 and 16.12, directing that the trial court "shall hold an evidentiary hearing to determine the merits of the petition. 'Upon the conclusion of the hearing . . . the superior court shall enter findings of fact and conclusions of law and an order deciding the petition.'" (Citing RAP 16.12)

The trial court conducted the evidentiary hearing over the course of four days during February and March of 2021 and took final argument on the matter in April of that year. For purposes of the hearing, the parties agreed that the judge could consider the entire record of the proceedings, as well as the court's own recollection of what occurred during the trial.[2] Numerous witnesses testified at the evidentiary hearing, including Rogers, his trial counsel, an investigator he retained for the PRP, his wife and son, the deputy prosecutor who tried the case, BACA's child liaison, E.R.'s mother and grandmother, and E.R.'s legal advocate.

---

[1] State v. Rogers, No. 77111-6 (Wash. Ct. App. Jun. 3, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/771116.pdf

[2] The judge who conducted the evidentiary hearing and decided the PRP on remand was the same judge who had presided over the original trial.

At the conclusion of the proceedings on remand, the trial court entered 137 findings of fact regarding various issues addressed by the parties, along with 61 conclusions of law. Ultimately, the court concluded that BACA's presence at trial during E.R.'s testimony was not inherently prejudicial to Rogers and did not create an unacceptable risk that impermissibly affected the jury; that BACA's presence did not deny Rogers a fair trial, the presumption of innocence, or the right to confront and cross examine witnesses; and that Rogers failed to meet his burden of proving the allegations contained in his petition and subsequent pleadings by a preponderance of the evidence. The trial court dismissed Rogers' PRP. He now seeks review of that dismissal from this court.

ANALYSIS

I.      Right To a Fair Trial

Rogers broadly argues that his right to a fair trial was denied by the presence of BACA members during E.R.'s testimony. He also specifically asserts that their presence at trial infringed on his right to the presumption of innocence and, by framing the BACA members in attendance as "accusers" based on the language on the patches on their vests, claims a violation of his right to confrontation as he was unable to cross examine them.[3]

_____

[3] As an additional aspect of several of Rogers' claims, he asserts that the fact that E.R. held a teddy bear while she testified compounded or contributed to the denial of these various rights. This facet of his argument was introduced after the first two versions of his petition were filed, and the trial court took testimony on the issue at the evidentiary hearing and included the topic in its findings of fact and conclusions of law. Rogers initially asserted that the bear had been given to E.R. by BACA and was dressed in clothing with BACA symbols and slogans, including the word "VICTIM" on the bear's vest, but those claims were disproved at the evidentiary hearing and Rogers conceded in later briefing that the bear was a generic stuffed animal. Further, the likelihood that E.R. would have the bear with her during testimony was known to defense counsel well before her appearance at trial.

- 3 -

"The constitutional safeguards relating to the integrity of the criminal process . . . embrace the fundamental conception of a fair trial, and . . . exclude influence or domination by either a hostile or friendly mob." Cox v. Louisiana, 379 U.S. 559, 562, 85 S. Ct. 476, 13 L. Ed. 2d 487 (1965). But, "a silent showing of sympathy or affiliation in a courtroom, without more, is not inherently prejudicial." State v. Lord, 161 Wn.2d 276, 284, 165 P.3d 1251 (2007). Here, we "must consider the courtroom scene presented to the jury and determine whether it was 'so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial.'" Id. at 285 (quoting Holbrook v. Flynn, 475 U.S. 560, 572, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986)).

As a preliminary matter, Rogers challenges conclusions of law 1, 2, and 6 which address the applicable legal standards.[4] We review the trial court's conclusions of law de novo. State v. Schlieker, 115 Wn. App. 264, 269, 62 P.3d 520 (2003). In conclusion of law 1, the trial judge properly cited In re Pers. Restraint of Gentry[5] and noted that for Rogers "to prevail on a PRP alleging constitutional error, he must show by a preponderance of the evidence that the

___

However, Rogers has waived review by failing to object to this matter at trial. State v. Lazcano, 188 Wn. App. 338, 354–56, 354 P.3d 233 (2015); RAP 2.5(a). Further, his trial counsel not only chose not to object, but actually elicited testimony regarding the bear during cross examination. Finally, it is unlikely that Rogers could establish that it was an abuse of discretion to allow E.R. to hold the stuffed bear while testifying. See State v. Hakimi, 124 Wn. App. 15, 19–22, 98 P.3d 809 (2004) (trial court did not abuse its discretion by permitting two child witnesses close in age to E.R. to hold dolls while testifying in a child molestation case).

[4] Rogers appears to ignore the standard of review utilized by an appellate court in a case presented under this procedural posture. The parties submitted an agreed motion to this court expressly seeking remand for resolution of this case. Accordingly, the trial court was ordered to both find facts as to Rogers' initial claims and to substantively decide his personal restraint petition. On appeal, we are tasked with reviewing those facts found by the trial court for substantial evidence and, in addition to considering the conclusions of law de novo, determine whether they properly flow from the findings of fact.

[5] 137 Wn.2d 378, 410, 972 P.2d 1250 (1999).

error has caused him actual prejudice." As conveyed in conclusion of law 6, we review the trial court's determination that spectator conduct does not violate due process for abuse of discretion. Lord, 161 Wn.2d at 283–84.[6] The court identified and employed the proper standards in consideration of Rogers' PRP. Accordingly, Rogers' assignment of error as to conclusions of law 1, 2, and 6 fails.

In 44 separate assignments of error, Rogers challenges 32 findings of fact and 31 conclusions of law. In addition to the standard of review set out above for conclusions of law, we review challenged findings for substantial evidence. State v. Coleman, 6 Wn. App. 2d 507, 516, 431 P.3d 514 (2018). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." State v. Stewart, 12 Wn. App. 2d 236, 240, 457 P.3d 1213 (2020). "'So long as this substantial evidence standard is met, a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently.'" Coleman, 6 Wn. App. 2d at 516 (internal quotation marks omitted) (quoting Blackburn v. State, 186 Wn.2d 250, 256, 375 P.3d 1076

---

[6] Rogers assigns error to conclusion of law 2, which relies on In re Pers. Restraint of Merritt, 69 Wn. App. 419, 424 n. 4, 848 P.2d 1332 (1993) to state: "The trial court need not make a determinative finding regarding the issue at hand, but only that [the] petitioner has failed to prove his claim by a preponderance of the evidence, in which case the petition will be dismissed." However, there can be no substantive claim here on appeal in light of the 137 findings of fact made by the trial court. Finding 137 states:

> The evidentiary hearing established, and the Court finds, that Rogers has failed to meet his burden of proof regarding his claims of demonstrative or rude behavior outside the courtroom. Even if Rogers' claims are accurate, however there is no evidence that any juror witnessed the behavior complained of. In the absence of any such evidence, Rogers' claims fail.

The court here made both a "determinative finding regarding the issue at hand" and that Rogers failed to prove his claim by a preponderance. Even if this conclusion of law was inaccurate, which it is not, Rogers would be unable to demonstrate error given the manner by which the trial court resolved his petition.

(2016)). Unchallenged findings of fact are treated as verities on appeal. <u>Stewart</u>, 12 Wn. App. 2d at 240.

Significant to this appeal is not only Rogers' failure to engage with the proper standard on review, but also the findings and conclusions he leaves unchallenged which we must then accept as verities. As such, he does not carry his burden to establish that he was denied his right to a fair trial or that the trial court erred in so concluding. Rogers avers that the trial court also erred in finding the vests BACA members wore were not guilt-suggestive or inherently prejudicial. Specifically, he argues the wording on the BACA vests, which stated "Bikers Against Child Abuse" accompanied by a fist with skull and crossbones and the phrase "No Child Deserves to Live in Fear," are what denied him a fair trial. At trial, Rogers did not object to the vests, which BACA members use to pose as a biker gang, but instead objected to the general "spectacle that's about to occur." This appeared to be aimed broadly at BACA's presence at trial as spectators rather than the messages on their attire. The failure to object to the language or imagery on the BACA vests does support an inference that defense counsel did not find that they were guilt-suggestive or inherently prejudicial to his client.

Rogers fails to assign error to numerous findings key to his argument and which binding precedent requires that we treat as verities. These unchallenged findings are:

> 64. The Court finds that BACA's presence did not actually or inherently prejudice Rogers' right to a fair trial or have an impact on the jury verdict.
> . . .
> 84. Further, the appearance of the BACA members during the time the jury was present was under the direct observation of the Court.

The Court has no recollection that BACA's appearance was "guilt suggestive" or intimidating to the jury, nor did BACA's appearance cause the Court to take any preventative or remedial action regarding their appearance.

85. No juror was called as a witness at the evidentiary hearing with regard to BACA appearance.
. . .
107. The Court further finds that E[.]R[.]'s and BACA's patches did not actually or inherently prejudice Rogers' right to a fair trial or have an impact on the jury's verdict.

108. No juror was called as a witness at the evidentiary hearing as to the issue of the legibility of patches worn by BACA members or E[.]R.

Taken together, these verities from the evidentiary hearing support the trial court's overarching conclusion that Rogers did not carry his burden to prove by a preponderance of the evidence that an error occurred which caused him prejudice. We decline to disturb such a conclusion based on this record and in light of the manner by which Rogers presented this appeal.

Rogers not only fails to show that BACA's presence, vests, and coordination of attire with E.R. were inherently prejudicial, but also that he suffered any actual prejudice at his trial. At the evidentiary hearing, Rogers did not call any of the jurors who decided his case to demonstrate that any of them observed, much less were able to read, the patches on the clothing. This is particularly critical given that the largest BACA patches, and likely the easiest to read from a distance, were on the backs of the vests and the members were seated in the gallery before the jurors entered the courtroom (presumably with their backs against the seats). See Norris v. Risley, 918 F.2d at 831 (9th Circ. 1990) (six jurors called to testify at evidentiary hearing as to whether they were aware of spectators wearing "Women

Against Rape" buttons). Instead, in unchallenged finding of fact 92, the court expressly found "that jurors were effectively shielded from any direct view of BACA members during trial." Even more critically, Rogers does not assign error to finding 107 which states "E[.]R[.]'s and BACA's patches did not actually or inherently prejudice Rogers' right to a fair trial or have an impact on the jury's verdict." We end our inquiry here since this finding goes to the heart of what Rogers must establish in order to succeed on his claims regarding BACA and his right to a fair trial. As described above, Rogers avers the trial court used the wrong test for determining prejudice, but he would be unable to prevail under any of the tests set out in the various state or federal cases on this issue based on the findings he left unchallenged.[7]

II.    Ineffective Assistance of Counsel (IAC)

Rogers also asserts that his trial counsel was ineffective and challenges the trial court's numerous conclusions of law to the contrary. To prevail on this claim, Rogers "must show (1) his defense counsel's performance fell below an objective standard of reasonableness and, if so, (2) that counsel's poor work prejudiced him." In re Pers. Restraint of Caldellis, 187 Wn.2d 127, 140, 385 P.3d 135 (2016). "When counsel's conduct can be characterized as legitimate trial strategy or

---

[7] Despite the framing of a claim regarding violation of the right to confrontation in the "Issues Pertaining to the Assignments of Error" in his opening brief, Rogers only mentions this challenge in passing in briefing. On that issue, he merely quotes from Norris, which was authored over a decade prior to the shift in confrontation clause analysis established in Crawford v. Washington. 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

If Rogers truly sought to have the issue considered as the separate assignment of error set out in briefing, he would first have the burden of establishing that the messages on BACA's vests constituted testimonial statements. See State v. Ta'afulisia, __ Wn.2d __, 508 P.3d 1059 (2022). As he fails to engage in the proper legal test, we do not undertake such review.

tactics, performance is not deficient." State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

However, after the initial assignment of error to the conclusions of law, Rogers did not otherwise engage with this challenge in his opening brief. In reply, after the State noted the absence of argument on this claim, Rogers attempts to reframe this assignment of error. However, we will not consider new issues raised for the first time in reply. RAP 10.3(C); State v. Pleasant, 38 Wn. App. 78, 81, 684 P.2d 761 (1984). Even if we were to consider Rogers' late reframing of his IAC claim, he fails to demonstrate how counsel's performance was not strategic, tactical or otherwise objectively reasonable. This is an essential aspect of determining deficiency. Equally critical to our consideration, Rogers provides no argument as to how this performance prejudiced him. Failure to engage in the requisite test forecloses relief on this challenge. Accordingly, we decline to entertain Rogers' assignment of error on this matter under RAP 10.3(a)(6) and 10.4. See State v. Mason, 170 Wn. App. 375, 384, 285 P.3d 154 (2012).

III. Notice to Defense of BACA's Attendance at Trial

Finally, Rogers asserts that the prosecutor engaged in misconduct by not informing him that BACA would be present at trial. However, the trial record and the court's findings after the evidentiary hearing indicate that Rogers' counsel was, at a minimum, informed at motions in limine or voir dire that BACA was aware of the case and would likely be attending at least part of the trial. As a preliminary issue, Rogers fails to provide any authority that would suggest he was entitled to notice with regard to any class of spectators in the context of a trial or other open

court proceedings. Based on the record before us, Rogers' claim regarding lack of notice is unsuccessful; both because he has again failed to engage with the substantial evidence test such that this court could reach the court's findings in this regard[8] and because he has not demonstrated that he was entitled to any such notice.

Rogers does not substantively engage with the relevant legal tests required for the various issues he presents on appeal and our review is confined by the unchallenged findings and conclusions which we must accept as verities. The findings of fact which were challenged are properly supported by substantial evidence in the record and the conclusions of law appropriately follow the controlling authority and flow from those findings. Accordingly, we find no error by the trial court and affirm.

WE CONCUR:

---

[8] This includes express findings that counsel did in fact receive notice of BACA's anticipated attendance at trial, but more critically, the trial court's determination that Rogers' trial counsel was not credible on this issue. Credibility determinations are within the province of the trial court and generally may not be disturbed by a reviewing court. In re Pers. Restraint of Davis, 152 Wn.2d 647, 680, 101 P.3d 1 (2004).